

07 CIV 7404

Gregory M. Nespole
Laurence J. Hasson
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
Attorneys for Plaintiff
270 Madison Avenue
New York, New York 10016
(212) 545-4600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENDO WEERNINK, Individually and on behalf of All Those Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>LIMELIGHT NETWORKS, INC., GOLDMAN SACHS & CO., MORGAN STANLEY & CO. INC., JEFFERIES & COMPANY, INC., PIPER JAFFRAY & CO., FRIEDMAN, BILLINGS, RAMSEY, & CO., INC., JEFFREY W. LUNSFORD, MATTHEW HALE, WALTER D. AMARAL, JOSEPH H. GLEBERMAN, FREDERIC W. HARMAN, MARK A. JUNG, ALLAN M. KAPLAN, PETER J. PERRONE, DAVID C. PETERSCHMIDT, NATHAN F. RACIBORSKI, and GARY VALENZUELA,<br><br>Defendants. | Civ.<br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff, individually and on behalf of all other persons similarly situated (the "Class"), by his undersigned attorneys, makes the following allegations on information and belief based upon the investigation of counsel, except as to the allegations pertaining specifically to plaintiff and plaintiff's counsel which are based on personal knowledge. The investigation conducted by plaintiff's counsel included, *inter alia*, a review and analysis of: (i) publicly-available news

articles and reports; (ii) public filings including, but not limited to, Limelight Networks Inc.'s (hereinafter "Limelight" or the "Company") Securities and Exchange Commission ("SEC") filings and prospectuses; (iii) securities analysts' reports and advisories about the Company; and (iv) press releases issued by defendants. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. This is a securities class action filed on behalf of purchasers of Limelight common stock from the date of the Company's initial public offering on June 8, 2007 (the "IPO"), through August 8, 2007, the last day of trading prior to the revelation of adverse news about the Company and its earnings performance (the "Class Period"). These claims are brought against Limelight, certain of its officers, directors, and the Company's underwriters (collectively, "Defendants") for violations of the federal securities laws in connection with the IPO.

2. This action arises under Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k, which imposes liability on a company's directors, officers, and underwriters, among others, for failure to craft a registration statement and prospectus (the "Prospectus") that fully and accurately informs investors of all material facts and industry trends affecting the issuer company. The issuer itself is held strictly liable for any material misrepresentations or omissions found in its Prospectus.

3. This Complaint asserts that Limelight's Prospectus contained both material misstatements and omissions, which plaintiff and the Class relied upon to their detriment. The representations made in the Company's Prospectus were materially false and misleading because at the time of the IPO, Limelight was already suffering from several adverse factors that were not revealed and/or adequately addressed in the document. These factors include, but are not limited to, that Defendants knew of but did not disclose seasonal drop-offs in Limelight's business

2

attributed to television industry operations and the Company's need to deeply discount prices because of customers' refusal to pay premium rates during those times of the year. Both factors were already causing a material adverse affect on Limelight's business and may continue to affect the Company's viability going-forward.

4.  The Director Defendants (as defined herein) and Limelight's underwriters could have – and should have – discovered the material misstatements and omissions in the Company's Prospectus prior to its filing with the SEC and distribution to the investing public. Instead, they failed to do so as a result of a negligent and grossly inadequate due diligence investigation.

5.  The adverse factors affecting Limelight's business were first revealed on August 9, 2007, in a teleconference convened by Limelight management and a Company issued press release announcing results for the quarter ended June 30, 2007.

6.  The August 9, 2007, announcements forecast a weak current quarter due to seasonality and pricing pressure, which caused the price of Limelight's common stock to plunge 40% in a single day, to close at $8.99 from the previous day's price of $14.80. Limelight's stock continued its sharp decline on August 10, 2007, closing at $7.94, culminating in a total loss of $6.86, or a staggering 46%, in just two days.

7.  Plaintiff and the Class have suffered serious financial damage as a result of Defendants' material misstatements and omissions in the Company's Prospectus, and bring this action to recover damages incurred thereby as well as the costs and expenses of this litigation and any further relief as may be just and proper.

## JURISDICTION AND VENUE

8.  The claims asserted herein arise under and pursuant to Sections 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).

10. Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and 28 U.S.C. § 1391(b), because many of the alleged acts, transactions, and conduct constituting violations of law, including the issuance and dissemination of materially false and misleading information to the investing public, occurred, at least in part, in this District. Defendants Goldman Sachs and Morgan Stanley are also headquartered in this District and defendants Gleberman and Perrone are believed to work in this District.

11. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff Hendo Weernink purchased shares of Limelight common stock issued pursuant to the IPO, as shown on the attached Certification, and was damaged economically thereby.

13. Defendant Limelight Networks, Inc. ("Limelight" or the "Company") is a Delaware corporation with its principal place of business located at 2220 W. 14th Street, Tempe, AZ 85281. Limelight is a high performance delivery network for digital media, providing global delivery solutions for on-demand and live-internet distribution of video, music, games, and social media. Limelight's infrastructure is optimized for large object sizes, large content libraries, and large audiences associated with compelling rich media content.

14. Defendant Goldman Sachs & Co. ("Goldman Sachs") is a limited partnership registered as a U.S. broker-dealer and futures commission merchant, and a subsidiary of The

4

Goldman Sachs Group, Inc., a Delaware corporation. Goldman Sachs maintains its corporate headquarters at 85 Broad Street, New York, NY 10004. The firm is an investment banking, securities, and management firm, which provides a wide range of services worldwide. Goldman Sachs was a co-lead underwriter of the Limelight IPO.

15.   Defendant Morgan Stanley & Co., Inc. ("Morgan Stanley") is a Delaware corporation that is headquartered at 1585 Broadway, New York, NY 10036. Morgan Stanley provides investment banking services, including underwriting, equity research, sales, trading and mergers and acquisition advice. Morgan Stanley was a co-lead underwriter of the Limelight IPO.

16.   Defendant Jefferies & Company, Inc. ("Jefferies & Co.") is a subsidiary of Jefferies Group, Inc., a Delaware corporation headquartered at 520 Madison Avenue, 12th Floor, New York, NY. Jefferies & Co. was an underwriter of the Limelight IPO.

17.   Defendant Piper Jaffray & Co. ("Piper Jaffray") is a subsidiary of Piper Jaffray Companies, a Delaware corporation headquartered at 800 Nicollet Mall, Suite 800, Minneapolis, MN. Piper Jaffray was an underwriter of the Limelight IPO.

18.   Defendant Friedman, Billings, Ramsey & Co., Inc. ("Friedman Billings") is incorporated in Virginia and headquartered at 1001 Nineteenth Street North, Arlington VA. Friedman Billings was an underwriter of the Limelight IPO.

19.   Defendant Jeffrey W. Lunsford ("Lunsford") is, and was at all times relevant hereto, the Company's President, Chairman, and Chief Executive Officer ("CEO"). He signed the Prospectus for the Limelight IPO.

5

20. Defendant Matthew Hale ("Hale") is, and was at all times relevant hereto, the Company's Chief Financial Officer ("CFO") and Secretary. He signed the Prospectus for the Limelight IPO.

21. Defendant Walter D. Amaral ("Amaral") is, and was at all times relevant hereto, a member of the Company's Board of Directors. He signed the Prospectus for the Limelight IPO.

22. Defendant Joseph H. Gleberman ("Gleberman") is, and was at all times relevant hereto, a member of the Company's Board of Directors. Gleberman has been a Managing Director in Goldman Sachs, & Co.'s Principal Investment Area since 1993. He signed the Prospectus for the Limelight IPO.

23. Defendant Frederic W. Harman ("Harman") is, and was at all times relevant hereto, a member of the Company's Board of Directors. He signed the Prospectus for the Limelight IPO.

24. Defendant Mark A. Jung ("Jung") is, and was at all times relevant hereto, a member of the Company's Board of Directors. He signed the Prospectus for the Limelight IPO.

25. Defendant Allan M. Kaplan ("Kaplan") is, and was at all times relevant hereto, a member of the Company's Board of Directors. Kaplan was a Co-Founder of Limelight. He signed the Prospectus for the Limelight IPO.

26. Defendant Peter J. Perrone ("Perrone") is, and was at all times relevant hereto, a member of the Company's Board of Directors. Peronne has been a Vice President in Goldman, Sachs & Co.'s Principal Investment Area since 2002. He signed the Prospectus for the Limelight IPO.

27. Defendant David C. Peterschmidt ("Peterschmidt") is, and was at all times relevant hereto, a member of the Company's Board of Directors. He signed the Prospectus for the Limelight IPO.

28. Defendant Nathan F. Raciborski ("Raciborski") is, and was at all times relevant hereto, a member of the Company's Board of Directors. Raciborksi is also a Co-Founder of Limelight Networks, Inc. and serves as the Company's Chief Technical Officer. He signed the Prospectus for the Limelight IPO.

29. Defendant Gary Valenzuela ("Valenzuela") was at all times relevant hereto a director on the Company's Board of Directors. On August 10, 2007, pursuant to a letter dated August 9, 2007, Valenzuela notified Limelight of his resignation from his position as a member of the Company's Board of Directors and as a member of the Audit Committee and the Nominating and Governance Committee, effective immediately. Valenzuela signed the Prospectus for the Limelight IPO.

30. Defendants Lunsford, Hale, Amaral, Gleberman, Harman, Jung, Kaplan, Perrone, Peterschmidt, Raciborski, and Valenzuela are collectively referred to hereinafter as the "Director Defendants."

## FACTUAL ALLEGATIONS

31. On March 22, 2007, Limelight Networks – a content delivery network ("CDN") provider for the media market – filed a Prospectus with the SEC, indicating its intent to float an initial public offering for the Company's common stock. Prior to the IPO, 16 directors and executives collectively owned 66% of Limelight while the rest of the Company was owned by investment firms, including an investor group let by Goldman Sachs affiliates. The Goldman Sacks affiliates bought a controlling stake in the Company in 2006 for $130 million.

32. On May 21, 2007, Limelight announced its IPO of 14.4 million shares of common stock. The Company intended to sell 11.4 million shares while shareholders would sell 3 million shares. Limelight's underwriters – Goldman Sachs, Morgan Stanley, Jeffreys & Company, Piper Jaffray, and Friedman Billings Ramsey – were also given the option to purchase 1.16 million shares. According to the Prospectus, the IPO was priced between $10 and $12 a share.

33. On June 6, 2007, Limelight filed an amendment to its Prospectus with the SEC, increasing its estimate of the IPO price to between $12 and $14 per share.

34. One day later, on June 7, 2007, Limelight reported that it had raised $240 million in connection with its IPO, well above the previously forecasted range. Limelight initially anticipated raising only $114.2 million, a figure that was later increased to $135.4 million.

35. By June 8, 2007, the date of the offering, the Company re-priced its IPO at $15.00 per share. Of the 16 million shares being offered, 12.5 million were offered by the Company, and 3.5 million were offered by selling stockholders. Limelight's underwriters received the option to purchase an additional 2.4 million shares at the $15 IPO price.

36. Limelight common stock began trading on the NASDAQ Global Market under the ticker symbol "LLNW."

37. On June 15, 2007, Limelight announced the completion of its IPO. The Company sold 14.9 million shares of common stock, including the sale of 2.4 million shares to the Company's underwriters. Certain stockholders sold an additional 3.5 million shares of their common stock. The net proceeds received by the Company in connection with the IPO were approximately $205.5 million.

38. Limelight's insiders handsomely profited from the IPO. They sold approximately $53 million worth of their stock in the Company at artificially inflated prices.

39. For example, Co-Founder and Chief Technical Officer Nathan Raciborski sold approximately $17.5 million worth of his shares, Co-Founder and Director Allan Kaplan sold approximately $9 million worth of his shares, and Chief Strategy Officer Michael Gordon sold approximately $8.7 million worth of his shares.

40. The rewards that Defendants reaped in connection with the Limelight IPO were unlawfully obtained because Defendants violated Section 11 of the Securities Act. Under Section 11, directors, officers, and underwriters, among others, are liable in negligence for failure to craft a Prospectus which fully and accurately informs investors of all material facts and industry trends affecting the issuer company. The issuer itself is held strictly liable for any material misrepresentations or omissions from the Prospectus.

41. A key policy underlying Section 11 liability is to enable prospective investors, like plaintiff and the Class, to make informed investment decisions based on the disclosure of adequate and truthful information regarding the issuer, its associated persons, and the offering. This policy is frustrated when a Prospectus contains materially false and misleading statements.

42. Limelight's Prospectus was materially false and misleading because it failed to reveal that the Company's revenue stream was at risk because of seasonal drop-offs attributed to the annual cycle of televised programming. According to Renaissance Capital, a research and investment management firm, video and music sites such as MSNBC, ABC, Viacom, and XM Radio account for 45% of Limelight's total sales. Limelight's delivery of content (i.e. streaming video) for businesses operating in the television industry represents a significant percentage of the Company's net sales.

43. The television industry – unlike independent video sharing websites like YouTube – experiences an annual drop-off in demand for content delivery network services in mid-May

when programs end their respective seasons. Since the delivery of television-related streaming media represents such a significant source of income for Limelight, any decline in demand for these services in a given reporting period would surely cause material fluctuations in the Company's quarterly results and overall profits.

44. Rather than disclose the seasonality of its television-based business as a risk factor in the Prospectus, Defendants materially misrepresented the impact of this concern on the Company's bottom line. According to the Prospectus filed with the SEC and disseminated to the investing public, "[t]o date, we have not identified any seasonal fluctuations in our quarterly results." Had Defendants conducted a proper and adequate due diligence investigation, however, they would have realized the seasonal impact caused by the Company's involvement in television-related streaming media.

45. Consequently, statements made in the Prospectus regarding fluctuations, or lack thereof, in Limelight's quarterly results are incomplete, false, and misleading. The Director Defendants and underwriters signed the Prospectus containing these statements, and failed to perform adequate due diligence to prevent their publication. Investors, like plaintiff and the Class, who read the Prospectus and relied on its disclosures were left unaware that the Company's revenue would seasonally spiral downwards during television's off-season, causing a material adverse affect on the Company's viability.

46. In addition to material misstatements and omissions concerning the seasonality of Limelight's television-related business, the Company materially misrepresented its need to deeply discount the price of its services because of customers' refusal to pay premium rates. While the Prospectus presented – as a future concern – the Company's potential inability to

charge adequate prices for its services, Limelight was already (concurrent with the IPO) providing expensive services to customers who were refusing to pay premium prices.

47. Customers' refusal to pay Limelight's rates is due, in part, to customers not having fully identified ways to generate revenues that would justify the exorbitant prices Limelight charged. According to Goldman Sachs analyst Sarah Friar, "[p]ricing is a function of Internet providers being slow to monetize content and not willing to pay high prices for delivery."

48. At the time of the IPO, Limelight was aware of this problem and was trying to solve it by deeply discounting its services and offering lower prices to customers. These deep discounts were adversely and materially affecting Limelight's second quarter business and would inevitably adversely affect the Company's business on a going-forward basis.

49. The Prospectus contained false and misleading statements because it addressed Limelight's pricing concerns as a potential problem, not one that presently existed and that Defendants were cognizant of. Indeed, Defendants were working to address the problems prior to effectuating the public flotation of their stock. Investors, instead, who read the Prospectus were not aware that Limelight was already resorting to material discounting practices that would impact the Company's future viability to retain customers and earn a profit.

50. While the seasonality and pricing concerns experienced by Limelight existed at the time of the IPO, they were not revealed to the public until the Company's conference call and press release on August 9, 2007. The press release, which announced results for the quarter ending June 30, 2007, reported a quarterly net loss of $10.463 million, or $0.23 per share, compared to a net loss of $4.7 million in the previous quarter. In addition, revenues were down from the previous quarter, and expenses increased substantially.

51.     Commenting on the disappointing results, Chief Executive Lunsford stated that "[t]he summer's seen a seasonal softness associated with large television and media customers." Had this factor been disclosed just two months earlier in the Company's Prospectus, plaintiff and the Class would have made an informed decision about whether or not to invest in Limelight.

52.     Limelight's August 9, 2007, forecast of a weak current quarter - citing seasonality and pricing pressure - caused the price of the Company's common stock to plunge 40% in a single day of trading, to close at $8.99 from the previous day's price of $14.80. Limelight's stock continued its sharp decline on August 10, 2007, closing at $7.94, culminating in a total loss of $6.86, or a staggering 46%, in just two days.

53.     The second quarter events so seriously impacted Limelight's business strategy that the Company is now guiding to full year adjusted EBITDA of $16 million to $19 million, versus the previous estimates of $30 million, and the Wall Street consensus figure of $26 million.

54.     Goldman Sachs (the Company's underwriter) downgraded its rating of Limelight's common stock and in a report written by analyst Sarah Friar said that "management credibility is shaken . . . Limelight's stumble highlights that management is still getting their arms around being a public company, and has yet to put in place a lot of the infrastructure to support execution on targets."

55.     At the close of business on August 16, 2007, Limelight's stock price dropped even further to $6.95, which represents less than half of the price at which the shares were offered in the Company's IPO.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action individually and on behalf of a Class of purchasers of Limelight common stock issued pursuant and/or traceable to the Company's June 8, 2007, IPO. Excluded from the Class are Defendants, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded.

57. The members of the Class are so numerous that joinder of all members is impracticable. Approximately 14.9 million shares of the Company's common stock were sold in the IPO. The precise number of Class members is unknown to plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Limelight or its transfer agent or the underwriters for the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions.

58. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

59. Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff and all of the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

13

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

61. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Securities Act was violated by Defendants' acts as alleged herein;

(b) Whether documents, including the Prospectus issued by Defendants to the investing public omitted and/or misrepresented material facts about Limelight and its business; and

(c) The extent of injuries sustained by the Class and the appropriate measure of damages.

## CAUSE OF ACTION

### Violations Of Section 11 Of The Securities Act
### Against All Defendants

62. Plaintiff repeats and realleges each and every allegation above as if set forth fully herein. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k. This claim is not based on fraud.

63. This claim is brought by Plaintiff on his own behalf and on behalf of other members of the Class who acquired Limelight stock pursuant to the Prospectus. Each Class

member acquired his shares pursuant to the Prospectus. Limelight is the issuer of the securities through the Prospectus. The Director Defendants are signatories of the Prospectus. Goldman Sachs and Morgan Stanley are underwriters of the securities offered through the Prospectus.

64. Defendants owed to plaintiff and the Class the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated to make the statements contained therein fair and accurate.

65. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

66. Defendants issued and disseminated, caused to be issued and disseminated, participated in the issuance and dissemination of, material misstatements to the investing public contained in the Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reason of the conduct alleged herein, each defendant violated Section 11 of the Securities Act.

67. Limelight, as issuer of the stock sold in the Prospectus, is strictly liable to plaintiff and the Class for the material misstatements and omissions discussed above.

68. At the time plaintiff and the Class obtained their shares of Limelight, plaintiff and the Class had no knowledge of the facts concerning the misstatements or emissions alleged herein.

69. This action is brought within one year after discovery of the untrue statements and omissions in the Prospectus, and within three years of the effective date of the Prospectus.

70. By virtue of the foregoing, plaintiff and the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) declaring this action to be a plaintiff class action properly maintained pursuant to the Federal Rules of Civil Procedure, certifying the Class, and certifying their counsel as Class Counsel;

(b) awarding plaintiff and other members of the Class damages against Defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

(d) awarding plaintiff and the Class such other and further relief as may be just and proper under the circumstances.

Dated: August 20, 2007

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

_____
Gregory M. Nespole (GN-6820)
Laurence J. Hasson (LH-5834)
270 Madison Avenue
New York, New York 10016
P: (212) 545-4600
F: (212) 545-4653

                                    Brian M. Felgoise, Esq.
                                    LAW OFFICES OF BRIAN M.
                                    FELGOISE, P.C.
                                    The Pavilion
                                    261 Old York Road – Suite 423
                                    Jenkintonw, PA 19046
                                    P: 215-886-1900
                                    F: 215-886-1909

                                    *Attorneys for Plaintiff*

/486232

**EXHIBIT**

**CERTIFICATION OF NAMED PLAINTIFF UNDER
THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995**

I, Hendo Weemink, declare as follows with respect to claims under the federal securities laws alleged in the Complaint:

1. I seek to join as one of the plaintiffs named in the foregoing complaint ("the Complaint").

2. I have reviewed the Complaint and have authorized my joinder.

3. I did not purchase stock in Limelight Networks, Inc. ("LLNW") at the direction of my counsel or in order to participate in any private securities action.

4. I am willing to serve as a representative party on behalf of the class, including providing testimony at depositions and trial, if necessary.

5. The following sets forth all of my transactions during the class period in LLNW stock:

| PURCHASE OR SALE | NO. OF SHARES | PRICE PER SHARE | DATE |
|---|---|---|---|
| Purchase | 200 | 18.83 | 6/12/07 |
| Purchase | 200 | 15.22 | 6/29/07 |

6. The following sets forth all federal securities actions filed during the past three years in which I have served or sought to serve as a representative party on behalf of a class:

7. I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery to the class, plus reasonable costs and expenses (including lost wages) directly relating to the representation of the class, except as approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

August 16th 2007
Date                                Signature

*Please Print the Following:*

Name: Hendo Weemink
Address: Wersakker 24
City/State: 5731KC Mierlo
County: Netherlands